[Crim. No. 5602.   In Bank.   Aug. 31, 1954.]

In re DENZEL LEE FLOYD on Habeas Corpus.

Joseph K. Robbins for Petitioner.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, G. A. Strader, Deputy Attorney General, James Don Keller, District Attorney (San Diego), and Olney R. Thorn, Deputy District Attorney, for Respondent.

S. Ernest Roll, District Attorney (Los Angeles), and Harold O. Pressman, Deputy District Attorney, as Amici Curiae on behalf of Respondent.

SPENCE, J.—Petitioner seeks through habeas corpus his release from his detention for the purpose of extradition to Ohio upon a charge of the crime of nonsupport of a minor child. The question presented is whether the alleged fugitive obligor may initiate proceedings in a court of this state, thereby voluntarily submitting to its jurisdiction, and upon compliance with its support order, be relieved from extradition. Petitioner contends that such procedure is open to him under the Uniform Reciprocal Enforcement of Support Act. (Code Civ. Proc., pt. 3, tit. 10a, §§ 1650-1690; Stats. 1953, ch. 1290; Ohio Rev. Code 1953, §§ 3115.01-3115.15.) However, the act properly construed does not provide in this manner for avoidance of the extradition process.

On February 3, 1954, petitioner was charged by indictment in Ohio with the crime of nonsupport of a minor child, a felony under the laws of that state. Thereafter the governor of Ohio issued an extradition warrant; it was presented to the governor of this state, who thereupon ordered petitioner's arrest; and petitioner was taken into custody on March 5, 1954. (U.S. Const., art. IV, § 2, cl. 2; U.S.C.A. tit. 18, § 3182.) Petitioner then instituted habeas corpus proceedings to test the legality of his detention upon these agreed facts: that both the States of California and Ohio have adopted uniform reciprocal support acts which are identical in substance; that on February 18, 1954, under a claim of right given by section 3115.04, Revised Ohio Code, which is identical with our Code of Civil Procedure, section 1661, he petitioned the Superior Court of San Diego County for an order requiring him to contribute to the support of his wife and minor child in Ohio; that such order was made on March 1 in the amount of $125 per month, and he has fully complied therewith.

The purpose of the reciprocal enforcement of support act is "to improve and extend by reciprocal legislation the enforcement of duties of support." (Code Civ. Proc., § 1652.) The act outlines a detailed procedure for the civil enforcement of the support duty through the commencement of proceedings by the dependent in the initiating state, where he or she resides; the transmission of the required certified documents to the court of the responding state, in which the de-

fendant resides; and the entry of an appropriate order by the latter court after acquiring jurisdiction of the defendant and holding a hearing on the support claim. (Code Civ. Proc., §§ 1670-1690; see *Smith* v. *Smith,* 125 Cal.App.2d 154, 156-157 [270 P.2d 613].) The act also provides for the criminal enforcement of the support duty through the extradition process. Thus, under the criminal reciprocal provisions (Code Civ. Proc., § 1660), the governor of another state may demand from the governor of this state the surrender of any person found in this state who is charged in such other state with the crime of failing to provide for the support of a person in the other state, and the governor of this state may surrender on demand by the governor of such other state any person found in this state who is so charged in such other state. And, as reciprocally provided (Code Civ Proc., § 1661, corresponding with the Ohio law, Ohio Reciprocal Act for Dependents, § 6, Ohio Gen. Code, § 8007-6): "Any obligor," contemplated by the Ohio counterpart of our section 1660, "who submits to the jurisdiction of the court of [this] state and complies with [such] court's order of support, shall be relieved of extradition for desertion or nonsupport entered in the courts of [this] State during the period of such compliance."

As defined by the act, the "obligor" is the "person owing a duty of support" and the "obligee" is the "person to whom a duty of support is owed." (Code Civ. Proc., § 1653.) No civil proceedings were commenced by the obligee in Ohio, the demanding state; rather petitioner simply elected to institute, under the purported authority of the Ohio law, some special proceeding in this state to secure a support order so that he might avoid the extradition process. But the act does not authorize such procedure. As "obligor," petitioner is the defendant in any support proceeding, and presumably the act used such term in the sense that such party does not initiate an action. The civil proceeding must be initiated by the plaintiff "obligee," and the defendant "obligor" may submit to the court's jurisdiction in the process of defending the action commenced against him. Thus the judicial function in the contemplated civil support proceedings is divided: commencement by the obligee of the action in the "initiating state" with a determination there that the court of another state may obtain jurisdiction of defendant or his property; and then upon certification to the "responding state," the court there assumes jurisdiction, sets the matter for hearing

and makes the appropriate order. (Code Civ. Proc., §§ 1674-1676; see *Smith* v. *Smith, supra,* 125 Cal.App.2d 154, 168.) Support for this construction is found in the provision of the act defining "responding state" as "any state in which any proceeding *pursuant to the proceeding in the initiating state* is or may be commenced." (Code Civ. Proc., § 1653; emphasis added.)

Likewise indicative of the act's intent that the jurisdiction of the court in the responding state stems from the initial civil proceedings commenced in the obligee's state is the sketchy, summary language of the act, which merely declares the obligor's right to submit to the jurisdiction of the court in the responding state and which does not prescribe even the bare minimum of procedural steps to be taken in invoking such jurisdiction. Yet extensive and detailed provision is made for the commencement of the support proceedings in the initiating or demanding state. (Code Civ. Proc., §§ 1670-1690.) Practical considerations must be kept in mind. In making the support order, the court in the responding state would have only the obligor before it and would not know the conditions, circumstances, or needs of the obligee. Thus the obligor, by independently initiating proceedings in the asylum state, could thereby obtain immunity from extradition. Such immunity might be bought cheaply. Without evidence of the conditions, circumstances and needs of the obligee before the court, insufficient or token support payments might suffice to immunize the obligor from extradition. Such a result would defeat the beneficent purposes sought to be attained by the civil proceedings prescribed in the act, the alleviation of "a social problem which has compelled interstate cooperation." (*Smith* v. *Smith, supra,* 125 Cal.App. 2d 154, 166.) However, these beneficent purposes may be attained if the conditions, circumstances and needs of the dependent are first determined in proceedings commenced in the obligee's state, followed thereafter by supplemental proceedings brought in the obligor's state. The court in the latter state can then, with the evidence of both parties before it, intelligently arrive at an appropriate support order.

█ From the above analysis, the conclusion follows that the act contemplates two distinct courses of action in the enforcement of support duties: (1) extradition and (2) the initiation of civil proceedings in the demanding state, with an opportunity thereafter given to the obligor to submit to the subsequently assumed jurisdiction of the court in the

responding state. While either or both courses of action may be pursued, the election lies wholly with the demanding state and the obligee; and the obligor may not independently institute an action in the responding state for the purpose of defeating the extradition process. While neither counsel nor independent research has disclosed a case wherein this precise problem has been adjudicated, this construction of the act coincides with the interpretation made in the opinions previously rendered on the question by the attorneys general of both California and Ohio. (Vol. 23, Ops. Cal. Atty. Gen. 33 [No. 53-157; Jan. 14, 1954]; vol. ——, Ops. Ohio Atty. Gen. —— [No. 3009, Aug. 31, 1953].)

*In re Susman*, 116 Cal.App.2d 698 [254 P.2d 161], cited by petitioner, involved a different factual situation. There the demanding state (New York), unlike Ohio, had no similar provisions to our section 1661, Code of Civil Procedure, and the obligor from New York sought to resist extradition in this state upon the basis of our said section. The court held that our section 1661 applied only to a California obligor who undertook to submit to the jurisdiction of the court of another state and properly denied relief in the habeas corpus proceeding. But insofar as the opinion there may imply that had there been reciprocal legislation with respect to relief from extradition, petitioner might have been relieved by instituting an independent support proceeding, such view must be disapproved.

The writ heretofore issued is discharged and the petitioner is remanded to custody.

Shenk, Acting C. J., Edmonds, J., Carter, J., Traynor, J., and Dooling, J. pro tem.,* concurred.

SCHAUER, J.—I dissent. The real question in this case appears to be whether to accomplish the practical result of obtaining the funds for support of the allegedly needy obligee, or to instead emphasize the penal aspects of the matter by supporting extradition of the obligor for the purpose of imprisonment. I believe it is better public policy to construe the statute to secure the financial relief for the dependent obligee by leaving the obligor in the position where he is receiving pay which can be made available to that end.

Such a construction, which would permit the procedure here followed by petitioner, appears to be contemplated by

---

*Assigned by Chairman of Judicial Council.

the provisions of section 1661 of the Uniform Reciprocal Enforcement of Support Act (Code Civ. Proc.), which has its counterpart in Ohio law. As applied here, I believe that from the viewpoint of the Ohio law that section means that ''Any obligor contemplated by Section 1660 [which permits extradition], who submits to the jurisdiction of the court of such other state [i.e., California] and complies with the court's [California's, which could adopt Ohio's] order of support, shall be relieved of extradition for desertion or nonsupport entered in the courts of this State [Ohio] during the period of such compliance.'' Moreover, the procedure which is spelled out in sections 1670 to 1690 appears to be adaptable to the proceedings here instituted by petitioner, but if not the courts are not powerless to devise a fair and appropriate procedure to be followed and one which would permit the evidence of the obligee (i.e., the obligee's conditions, circumstances, or needs) to be as fully presented to our courts as would be the case if the support proceedings are initiated in the obligee's home state and followed by supplemental proceedings in California.

Further, this seems, as mentioned, the more practical approach to actually attain the economic objective of laying hands upon the support funds. Surely that objective is more likely to be achieved by permitting the obligor to remain in the state where he has become established and gains his livelihood than by the penal action of extradition for imprisonment. The latter procedure lends itself more readily to satisfaction of the desire for vengeance than it does to meeting the support needs of the dependent.

I would approve the procedure followed by petitioner and release him on the writ here sought.