[Crim. No. 9250.   Second Dist., Div. Four.   Aug. 31, 1964.]

In re BENJAMIN FRANKLIN HART on Habeas Corpus.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Doris H. Maier, Assistant Attorney General, Edward A. Hinz, Jr., and Edsel W. Haws, Deputy Attorneys General, for Appellant.

Young & Henrichsen and C. B. Henrichsen for Respondent.

KINGSLEY, J.—This appeal is prosecuted by the People from an order granting the application of respondent, Benjamin Franklin Hart, for a writ of habeas corpus.

The facts leading up and pertaining to the controversial event are not disputed, and may be summarized as follows: On March 15, 1963, the Governor of the State of Kansas issued a requisition for extradition of respondent. The requisition alleged that respondent had been duly charged in Kansas with the crime of child desertion, in that he did "unlawfully, feloniously, wilfully and without lawful excuse, desert, neglect and refuse to provide for the support and maintenance of his minor child . . . said child being then and there and since that time in destitute and necessitous circumstances." The extradition papers also contained an affidavit of respondent's former wife stating that, in Jackson County, Oklahoma, respondent was ordered to pay child support in the amount of $70 per month starting May 1960, and that he had not paid any support since August 1960. The affidavit further stated that respondent resided in South America and that the Uniform Reciprocal Support Act did not grant an adequate remedy to assure the payment of child support.

The requisition and accompanying papers were forwarded to the Governor of this state. On March 18, 1963, the extradition papers from the State of Kansas, including the requisition from the Governor, were approved "as to form" by the Attorney General of this state. On March 19, 1963, the Governor of this state issued his warrant of rendition, which required that respondent be arrested and delivered into the custody of an authorized agent of the State of Kansas. On April 29, 1963, respondent filed his application for a writ of habeas corpus in the Superior Court of the State of California for the County of Ventura. In that proceeding, respondent's primary contention was that the Governor's warrant, pursuant to which respondent was arrested, and the papers accompanying the same, affirmatively indicate on their face that there had been no compliance with the requirements of California Code of Civil Procedure, section 1661. After a hearing on the matter, respondent's petition was granted.

So far as we can discover, this is a case of first impression not only in this state but in all other states that have adopted the 1958 amendment to section 6 of the Uniform Reciprocal Enforcement of Support Act (Cal. Code Civ. Proc., § 1661).

■ The primary issue on this appeal is whether section 1661, subdivision (b), of the Code of Civil Procedure creates a *mandatory* condition precedent before the Governor of this state may honor a request for extradition of a person, not a ''fugitive'' within the meaning of article IV of the federal Constitution, for his failure to support dependents in the demanding state. We believe it does.

Section 1661, subdivision (b) provides: ''When under this or a substantially similar law, a demand is made upon the Governor of this State by the Governor of another state for the surrender of a person charged in the other state with the crime of failing to provide support, the Governor *shall call upon any prosecuting attorney to investigate or assist in investigating the demand, and to report to him whether any action for support has been brought under this title or would be effective.*'' (Italics added.)

Prior to the 1959 amendment to section 1661, a defendant charged with the crime of failure to provide, and whose extradition was sought, could not, under the majority view, commence a civil proceeding in his own behalf in the asylum state, obtain a responding court's support order, comply therewith, and thus defeat the demanding state's right to extradite him for the commission of the crime of failure to provide. (*In re Floyd* (1954) 43 Cal.2d 379 [273 P.2d 820]; Brockelbank, Interstate Enforcement of Family Support, ch. II; *Extradition Under the Uniform Reciprocal Enforcement of Support Act,* 32 So.Cal.L.Rev. 83.)

Because of the harsh results that could flow from extradition without the defendant first being given a chance to comply with the civil provisions of the Uniform Reciprocal Enforcement of Support Act, the commissioners on Uniform State Laws completely redrafted section 6 of the act to alleviate this problem. In 1959, California and many other jurisdictions amended the criminal enforcement provisions of their reciprocal support acts to conform. Our revised section 1661, which is substantially the same as the revised section 6 of the uniform act, contemplates, by subdivision (b) thereof, that an investigation of the circumstances of defendant's failure to support his dependents must be made before the Governor of this state shall honor a demand for extradition. This intent

is not only clearly expressed by subdivision (b) but reinforced by subdivision (c) of section 1661, which states: "If an action for support would be effective and no action has been brought, the Governor shall delay honoring the demand for a reasonable time to permit prosecution of an action for support." In light of the foregoing, we hold the provision in section 1661, subdivision (b), requiring the Governor to call upon any prosecutor to investigate the demand for extradition, to be a mandatory condition precedent before the Governor may decide to honor the request for extradition.

The Attorney General argues that to hold that section 1661, subdivision (b), imposes a mandatory requirement impinges on the constitutional discretion of the Governor. In the first place, we are not here concerned with an extradition under the provisions of article IV of the federal Constitution. Respondent is not a "fugitive" within the meaning of that provision and the statutes implementing it. His extradition is sought pursuant to section 1660 of the Code of Civil Procedure, which section, so far as herein pertinent, provides: "The provisions for extradition of criminals not inconsistent herewith shall apply to any such demand although the person whose surrender is demanded was not in the demanding state at the time of commission of the crime and although he had not fled therefrom. Neither the demand, the oath nor any proceedings for extradition pursuant to this section need state or show that the person whose surrender is demanded has fled from justice, or at the time of the commission of the crime was in the demanding or other state."

This section, in effect, supplements with reference to persons sought under the Reciprocal Enforcement of Support Act, the more general provisions of section 1549.1 of the Penal Code, which section also authorizes the Governor to surrender "any person in this State charged in such other State . . . with committing an act in this State, or in a third State, intentionally resulting in a crime in the State whose executive authority is making the demand. . . . even though the accused was not in the demanding State at the time of the commission of the crime, and has not fled therefrom." But the Governor has no power to cause the arrest and surrender of a resident of this state except insofar as the law, either by constitutional provision or by statute, empowers him so to invade the liberty of the resident. Where, as here, the power is one given by the Legislature, the Legislature may

impose such conditions precedent to its exercise as the Legislature may deem proper.[1]

■ Secondly, the statute does not purport to impose, and we do not imply, any limitation on the ultimate discretion of the Governor. All that is required is that the Governor be adequately informed, by a responsible public official, of the facts and circumstances surrounding the prospective defendant's failure to support his dependents, so that the Governor may be able to exercise his discretion intelligently. Under the circumstances of this case, we, of course, express no opinion as to whether, or subject to what limitations, a petitioner for a writ of habeas corpus may attack an ultimate finding by the Governor, based on his evaluation of the statutory report from the prosecuting attorney. (Cf. *In re Fedder* (1956) 143 Cal.App.2d 103 [299 P.2d 881].)

■ Appellant further contends that, if the requirements set forth in section 1661, subdivision (b), are in fact mandatory, they have been satisfied in the case at bar. Appellant argues that the term "prosecuting attorney, as used in the above section, means either the prosecuting attorney of the State of California, or of the demanding state; and that the prosecuting attorney of the State of Kansas did make such an investigation and that the Governor of this state, in making his decision, acted upon the information thus gleaned, and in turn satisfied the requirements of section 1661, subdivision (b). We cannot agree.

Section 1653 of the Code of Civil Procedure, which provides for the definition of terms used in our adaptation of the Uniform Reciprocal Enforcement of Support Act, states: "As used in this title unless the context requires otherwise, . . . (9) 'Prosecuting official' means the district attorney of the county in which the obligor is alleged to be present." The clear intention of section 1661, subdivision (b), is to require an investigation of the existing situation here in California before a man is taken away from the state in which he is residing and subjected to the criminal prosecution for nonsupport in another state. This can only be done by the district attorney of the county in which the defendant is residing, and not by the district attorney of the demanding state.

■ Further, the statutory language directs the Governor

[1]Respondent argues that sections 1660 and 1549.1 are unconstitutional, as going beyond the scope of the provision in the federal Constitution. That contention has heretofore been considered and rejected. (*In re Cooper* (1960) 53 Cal.2d 772 [3 Cal.Rptr. 140, 349 P.2d 956], cert. den., 364 U. S. 294 [81 S.Ct. 104, 5 L.Ed.2d 83].)

to "call upon" and not merely to "request." The words import an obligation on the part of the prosecutor to respond—a duty which the Legislature of this state has power to impose only on California officials.

■ The Attorney General argues, finally, that he is a "prosecuting attorney" and that his approval "as to form" satisfied the statutory requirement. Apart from the fact that the Attorney General clearly is not within the statutory definition above quoted, his approval in this case can mean no more than it says—that he regarded the documents as formally correct. Nowhere does the Attorney General intimate that he made any investigation under section 1661, subdivision (b), or that he had ever made any report thereon to the Governor.

Absent compliance with the requirement of section 1661, subdivision (b), the Governor was without jurisdiction to issue a warrant for a nonfugitive on a nonsupport charge. The warrant was void and afforded no authority for detention of respondent.

The order appealed from is affirmed.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied September 17, 1964, and appellant's petition for a hearing by the Supreme Court was denied October 28, 1964. Mosk, J., did not participate therein. Traynor, C. J., was of the opinion that the petition should be granted.