Edward R. BROWN, Appellant,

v.

The STATE of Texas on Behalf of Lisa JARVIS, Appellee.

No. 3–90–189–CV.

Court of Appeals of Texas, Austin.

April 17, 1991.

Rehearing Overruled June 5, 1991.

---

John E. Hawtrey, Bryan, for appellant.

Dan Morales, Atty. Gen., Rhonda Am-kraut Bayer, Asst. Atty. Gen., Austin, for appellee.

Before POWERS, JONES and SMITH, JJ.

SMITH, Justice.

This is an appeal of a district court's order imposing child support pursuant to the Revised Uniform Reciprocal Enforcement of Support Act ("RURESA"),[1] Chapter 21, Tex.Fam.Code Ann. (1986 & Supp. 1991), and denying jurisdiction to determine access to the child in the same proceeding

1. Texas adopted the Revised Uniform Reciprocal Enforcement of Support Act in 1987. This action for the enforcement of appellant's support obligation arose in 1989. North Carolina has adopted the Uniform Reciprocal Enforcement of Support Act of 1950, (as amended in 1952 and 1958) ("URESA"), N.C.Gen.Stat., ch. 52A (1984). When we discuss the actions of the North Carolina district court, the initiating forum, we will refer to URESA. When we discuss the actions of the Texas district court, the responding forum, we will refer to RURESA.

under the Uniform Child Custody and Jurisdiction Act ("UCCJA"), Tex.Fam.Code Ann. §§ 11.51–75 (1986). The State of North Carolina, through the Texas Attorney General, initiated an action to obtain child support and medical insurance for the child, who lives with his mother in North Carolina, from the child's father who resides in Texas. The father filed a counterclaim in the RURESA action requesting access to the child in accordance with the Texas standard visitation guidelines. Tex. Fam.Code Ann. §§ 14.032–033 (Supp.1991). The district court ordered appellant to pay child support and declined jurisdiction to address visitation. We affirm the trial court's decision.

In 1985 appellant, Edward Brown, obtained a divorce from Lisa Jarvis in the district court of Travis County, Texas. The decree of divorce dissolved the marriage and found that appellant and Jarvis were the parents of a minor child. The court made no determination regarding custody, access to or support of the child; at the time of the divorce mother and child had lived in North Carolina for over a year. Neither party appealed the judgment granting the divorce.

In 1988 the father filed a "Petition to Modify Foreign Judgment in Suit Affecting the Parent–Child Relationship" in the North Carolina court, seeking visitation with the child. The mother responded by asking the court to determine custody and to award child support. The North Carolina court found that: (1) a controversy had arisen between the parties as to custody of and visitation with the child; (2) facts existed justifying North Carolina's assumption of jurisdiction pursuant to North Carolina's version of the UCCJA;[2] (3) the child had resided in that state with the mother since December 1983, making North Carolina the child's home state under the UCCJA; (4) the Texas court had not exercised jurisdiction to determine custody, access, or support during the divorce proceedings; (5) the mother was a fit and proper person to have custody of the minor child pending further orders; and (6) the father's pleadings seeking visitation did not comply

with the form and substance of the North Carolina Rules of Civil Procedure. Based on these findings the North Carolina court exercised its jurisdiction, awarded custody of the child to the mother and dismissed the father's flawed petition seeking visitation. Appellant did not attempt to correct the procedural inadequacies of his petition seeking visitation nor did he appeal the North Carolina order.

In 1989 the North Carolina Department of Social Services filed a petition on behalf of the mother and child seeking child support and medical coverage under the provisions of URESA. The North Carolina court transmitted the petition to the Texas Attorney General to file this RURESA action in the responding court of this state where appellant resides. Appellant answered the RURESA action with a general denial and brought his counterclaim seeking the standard visitation mandated in all suits affecting the parent-child relationship under Texas Family Code § 14.032. A master for the Texas district court heard the matter. The district court adopted the master's report and recommendation, ordering appellant to pay child support of $50.00 per week and declining jurisdiction to hear the access counterclaim.

Appellant sought a de novo hearing in the district court, as provided by the local rules. The district court found that, under the Texas UCCJA, this state did not have jurisdiction over the mother and child in the original divorce proceeding or in the RURESA proceeding. The court found that, under RURESA, a responding court acquires no jurisdiction for any purpose other than imposing and enforcing child support orders. The court further found that an action brought to enforce support under RURESA is not a suit affecting the parent-child relationship ("SAPCR") under the Texas Family Code, and, therefore the standard possession guidelines of the Texas Family Code do not apply. From the district court's order continuing the support obligation previously imposed and denying jurisdiction to determine access to the child, appellant brings this appeal. The State of Texas responded as appellee on behalf of the mother and child.

---

**2.** Uniform Child Custody Jurisdiction Act, N.C. Gen.Stat. ch. 50A (1989).

In his first point of error, appellant complains that the trial court's finding of no jurisdiction over the mother and child under the Texas UCCJA denies him procedural due process under the United States and the Texas Constitutions. The adoption of the UCCJA in all states had the laudable goal of reducing interstate jurisdictional conflicts concerning custody and visitation.[3] The "home state"[4] concept awards jurisdiction over custody and visitation determinations to the state in which a child has resided for the six consecutive months immediately preceding the suit, barring emergencies or illegal removal of the child, with certain exceptions not applicable here. The trial court correctly concluded that because Texas is not the child's home state, the court had no jurisdiction to determine visitation rights, which are included in "custody determinations" under the UCCJA.[5]

Had the Texas court acquired jurisdiction over the child by the divorce action, appellant might have argued that the divorce court retained continuing exclusive jurisdiction to determine questions of visitation so long as one parent remained in the state, even after the child acquired a different home state and Texas lost jurisdiction to determine custody. See *Heartfield v. Heartfield*, 749 F.2d 1138, 1142–43 (5th Cir. 1985); *Hutchings v. Biery*, 723 S.W.2d 347, 349 (Tex.App.1987, no writ); *Hemingway v. Robertson*, 778 S.W.2d 199, 201 (Tex. App.1989, no writ). Without approving the *Heartfield* line of cases, we note that they would allow most noncustodial parents who remain in Texas to assert issues of visitation in this state, even after the child and the custodial parent establish a new home state.

Appellant is foreclosed from relying on the continuing exclusive jurisdiction of the Texas court to determine visitation rights because the divorce court did not exercise original jurisdiction over the child, and, thus, the divorce was not a SAPCR. *Creavin v. Moloney*, 773 S.W.2d 698, 702 (Tex.App.1989, writ denied). Appellant chose to dissolve his marriage in a state that did not have jurisdiction over his child or the child's mother[6]; that choice deprives him of the benefit of litigating postdivorce visitation issues in this state, but it does not make the UCCJA unconstitutional. Appellant has not been deprived of due

---

3. Tex.Fam.Code Ann. § 11.51 (1986). Purposes; Construction of Provisions

(a) The general purposes of this subchapter are to:

(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody that have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in the state that can best decide the case in the interest of the child;

(3) assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) avoid relitigation of custody decisions of other states in this state insofar as feasible;

(7) facilitate the enforcement of custody decrees of other states;

(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(9) make uniform the law of those states that enact it.

(b) This subchapter shall be construed to promote the general purposes stated in this section.

4. "Home state" is defined as: "... the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned." Tex.Fam.Code Ann. § 11.52(5) (1986).

5. "Custody determinations" is defined as: "... a court decision and court orders and instructions providing for the custody of a child, *including visitation rights,* but does not include a decision relating to child support or any other monetary obligation of any person." Tex.Fam.Code Ann § 11.52(2) (1986). (Emphasis added).

6. The trial court found that the Texas court did not acquire jurisdiction over the child or the mother in the divorce proceeding or in this RURESA action. *See Rogers v. Rogers,* 536

process simply because he must seek process in the state where his child resides. Balancing the social policy interests behind the adoption of a uniform scheme to reduce interstate jurisdictional conflicts in custody and visitation disputes against the inconvenience imposed on a few noncustodial parents who must pursue those issues in their child's home state, we conclude that the Texas UCCJA is not unconstitutional. We overrule appellant's first point of error.

In point of error two appellant complains that RURESA violates the right to equal protection of noncustodial parents [7] if the trial court correctly interpreted the act to confer jurisdiction to impose and enforce child support without at the same time conferring jurisdiction over the custodial parent and child. Appellant does not explain how he has been denied equal protection by the court's application of RURESA.[8] He simply argues that if the custodial parent has access to the courts of this state to enforce child support obligations, the noncustodial parent must have equal access to the courts to address all parent-child issues in the same action. We disagree.

■■■ The equal protection clause does not preclude the states from resorting to classification, but only requires that the classification be reasonable, not arbitrary, and rest on some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly situated will be treated alike. *Old Dearborn Distributing Co. v. Seagram–Distillers Corp.*, 299 U.S. 183, 197, 57 S.Ct. 139, 146, 81 L.Ed. 109 (1936); *accord Smith v. Davis*, 426 S.W.2d 827, 830 (Tex.1968); *San Antonio Retail Grocers, Inc. v. Lafferty*, 156 Tex. 574, 297 S.W.2d

813, 815 (1957). Due process considerations afford appellant the right to be sued for child support in the state of his residence, rather than in the home state of his child. *See Kulko v. Superior Court of California*, 436 U.S. 84, 98–101, 98 S.Ct. 1690, 1700–1701, 56 L.Ed.2d 132 (1978); *Creavin*, 773 S.W.2d at 703; *Perry v. Ponder*, 604 S.W.2d 306, 313 (Tex.App.1980, no writ). RURESA gives the custodial parent access to the courts in the obligor's home state to accomplish the goal of enforcing child support obligations while respecting the constitutional rights of the obligor. But, issues of custody and visitation focus on the status of the child, and "it is generally believed that the state with the closest connection to the child has the greatest access to information concerning the child's care, protection, training and relationship." *Creavin*, 773 S.W.2d at 703. Therefore, the statutory scheme limiting RURESA proceedings to issues of support is reasonable and has a fair and substantial relation to the objective of the act. "The drafters did not want URESA proceedings to be complicated by the visitation issue...." ABA Center on Children and the Law, *Interstate Child Support Remedies*, Ch. 12, § III(B), 234 (M.C. Haynes with G.D. Dodson eds. 1989). We overrule appellant's second point of error.[9]

We will consider points of error three and four together. In point of error four appellant complains that the trial court incorrectly determined that a RURESA proceeding is not a SAPCR under the Texas Family Code. This contention relates to point of error three in which appellant complains that the court erred in failing to apply the standard visitation guidelines intended to guide Texas courts in determin-

S.W.2d 442, 443 (Tex.App.1976, no writ) (a suit is a SAPCR when, by its main objective, it invokes Texas Family Code Title Two, *subtitle A*.)

7. Appellant framed his complaint in terms of the denial of equal protection to "fathers"; we expand his complaint to encompass the equal protection of all noncustodial parents who owe a duty of support to a child.

8. Appellant cites *Palmore v. Sidoti*, 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984), for the proposition that granting custody based on the best interests of the child is "a substantial governmental interest for purposes of the equal

protection clause." *Id.* at 433, 104 S.Ct. at 1882. We see no relationship between *Palmore,* a case holding that a mother's interracial marriage was an impermissible basis for changing custody of her child to the father, and the issues presented in this appeal.

9. A California court has overruled a similar challenge to the constitutionality of RURESA on equal protection grounds. *Smith v. Smith,* 125 Cal.App.2d 154, 270 P.2d 613, 624 (1954). The *Smith* court also found that RURESA did not violate the due process clause or the prohibition against ex post facto laws. *Id.* 270 P.2d at 623.

ing the terms for possession of a child in all SAPCR's.

 Section 11.01(5) of the Texas Family Code defines SAPCR: "A suit affecting the parent-child relationship means a suit brought *under this subtitle* in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is sought." (Emphasis added.) "[T]his subtitle" refers to Family Code Title Two, *subtitle A:* The Parent–Child Relationship and the Suit Affecting the Parent–Child Relationship, §§ 11.01–18.06. RURESA is found in Title Two, *subtitle B:* Uniform Acts and Interstate Compacts, §§ 21.01–25.09. Therefore, under the plain language of the statute, a RURESA action is not a SAPCR. *See* Op.Tex.Att'y Gen. No. H–353, p. 1647 (1974). We uphold the trial court's determination that a RURESA proceeding is not a SAPCR and overrule point of error four.

This disposition causes appellant's third point of error to fail as well. The guidelines creating a "rebuttable presumption" that the standard terms of possession are in the best interest of a child apply only in a SAPCR. Tex.Fam.Code Ann. §§ 14.-032(a) and 14.033(k) (Supp.1991). It was not error for the trial court to disregard the visitation guidelines in the RURESA proceeding. We overrule point of error three.

We also overrule point of error five in which appellant urges the court to equate support obligations under RURESA with support obligations in a SAPCR. RURESA loosely incorporates the parental duties described in chapters 13 and 14 of the Texas Family Code for the purpose of defining a support obligation. The trial court correctly found that this definitional reference does not transform a RURESA action into a SAPCR.

 Finally, we consider appellant's sixth point of error, in which he complains that the trial court erred by failing to appoint an attorney ad litem for the minor child in the RURESA proceeding. We conclude that appellant did not preserve this error, if any, because he failed to request an attorney ad litem at trial and failed to obtain the trial court's ruling on such a request during trial or in his motion for new trial. *See* Tex.R.App.P.Ann. 52(a) (Pamph.1990).

 The transcript filed with this Court does not include appellant's request that an attorney ad litem be appointed for the child. However, assuming that this issue were properly presented on appeal, the Texas Family Code § 11.10(c) commits such appointments to the sound discretion of the trial court. We hold that the trial court did not abuse its discretion in this matter.

All of appellant's challenges to the constitutionality of RURESA and the UCCJA are without merit. The trial court properly interpreted both acts to limit this RURESA proceeding to the issue of child support and to decline jurisdiction to hear the visitation issue. We affirm the judgment of the district court.