**THE STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, Petitioner,**

v.

**Emil DOPYERA, et al., Respondents.**

**No. D–0692.**

Supreme Court of Texas.

July 1, 1992.

Dan Morales, Cynthia L. Hooper, Austin, for petitioner.

Terry P. Ayre, Houston, for respondents.

OPINION

GAMMAGE, Justice.

The issue in this case is whether federal maritime law preempts state sovereign immunity law to require application of maritime's pure comparative negligence principles to an accident at a state-operated drawbridge. The trial court awarded damages under the maritime rule and the court of appeals affirmed. The court of appeals apparently concluded the State of Texas had waived its sovereign immunity and that federal maritime law preempted state law. 799 S.W.2d 469. We hold the State has not waived its immunity and that Congress did not intend for maritime law to preempt a state's sovereign immunity law in this manner. We reverse the judgment of the lower courts and render judgment for the State.

The Dopyeras sued for property damage resulting from the collision of their charter yacht with a drawbridge owned and operated by the Texas State Department of High-

ways and Public Transportation.[1] The Dopyeras, alleging the Department negligently operated and maintained the motor-driven bridge, brought suit under the Texas Tort Claims Act.[2] The State raised affirmative defenses of sovereign immunity and contributory negligence.

Trial was to a jury, which found the Dopyeras 60% at fault, the State 40% at fault, and total damages of $130,000. The Dopyeras moved for judgment on the verdict, seeking for the first time application of the federal maritime remedy of pure comparative negligence. Texas law as expressed in its comparative responsibility statute provides that in a negligence action, a claimant may recover only if his percentage of responsibility is no more than 50 percent. TEX.CIV.PRAC. & REM.CODE ANN. § 33.001(a) (Vernon Supp.1991). The trial court applied the maritime rule and awarded the Dopyeras 40% of the damages, or $52,000, plus interest and costs. The court of appeals affirmed, concluding the State waived its immunity, the federal maritime remedy applied, and the Dopyeras' contributory negligence could only mitigate, not bar, the damage award. 799 S.W.2d 469.

◼ Generally, admiralty jurisdiction extends to vessels on navigable waters, and any tort occurring on those waters and bearing a significant relationship to traditional maritime activity is governed by maritime law. *McCormick v. United States*, 680 F.2d 345, 347 (5th Cir.1982). A maritime tort claim may be brought in state court pursuant to the "saving to suitors" clause in 28 U.S.C. § 1333 (1986). *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222–223, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986) (state courts are constrained by "reverse-*Erie* doctrine" which requires that substantive state remedies conform to federal maritime standards). If maritime interests are involved, there is a strong policy to apply uniform rules of maritime conduct and liability to promote and protect maritime commerce. *Pope &*

*Talbot v. Hawn*, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

◼ In the instant case, the court of appeals concluded that maritime law covered the Dopyeras' vessel operating in navigable waters, and that federal law preempted state law. Under federal maritime law's pure comparative negligence standard, when a vessel's captain and one or more other parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is allocated among the parties proportionately to their comparative degree of fault. *United States v. Reliable Transfer Co.*, 421 U.S. 397, 411, 95 S.Ct. 1708, 1715, 44 L.Ed.2d 251 (1975). The court of appeals emphasized the need for a uniform and consistent maritime law system, and the incompatibility of Texas' comparative responsibility rule with admiralty's pure comparative rule.

◼ The court of appeals erred by failing to give proper weight to the State's interest in its own sovereign immunity by concluding that federal law preempted the State's limitations on its consent to be sued. Congress has expressed no clear intent to abrogate state sovereign immunity and impose general maritime law on the states for property damage. Moreover, the State's limited waiver of immunity under its Tort Claims Act permits imposition of only the state remedy, and does not allow the broader federal maritime remedy of pure comparative fault.

The threshold issue is whether the constitutional grant of maritime jurisdiction to the federal government itself preempted state sovereign immunity law. While this is not an Eleventh Amendment case, the Supreme Court long ago addressed and resolved this issue in an Eleventh Amendment context. In *Ex parte New York, No. 1*, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921), it was argued that the Eleventh

---

1. While the case was pending on appeal the legislature renamed the agency the Department of Transportation.

2. TEX.CIV.PRAC. & REM.CODE §§ 101.001–.109. Before codification as chapter 101 of the Civil Practice and Remedies Code, the Tort Claims Act was article 6252–19 of the Revised Civil Statutes.

Amendment's immunity refers only to suits "in law or equity," and that suits "in admiralty" could therefore be brought against the states. The Court rejected that argument, reasoning that the Eleventh Amendment is but a recognition of the fundamental principle that a state may not be sued without its consent and that admiralty and maritime jurisdiction was not exempt from that principle. *Ex parte New York, No. 1,* 256 U.S. 490, 497–99, 41 S.Ct. 588, 589–90, 65 L.Ed. 1057 (1921). Further, responding to the argument that allowing a state immunity would destroy the "symmetry and uniformity" of maritime law, the Court wrote:

> It is not inconsistent in principle to accord to the states, which enjoy the prerogatives of sovereignty to the extent of being exempt from litigation at the suit of individuals in all other judicial tribunals, a like exemption in the courts of admiralty and maritime jurisdiction.

*Id.* at 503, 41 S.Ct. at 591.

Although state sovereign immunity is not absolute,[3] the Supreme Court has usually required a "clear statement" or "unequivocal expression" of intent to abrogate the immunity in a *statute*.[4] In the maritime law area, the Court held that the Jones Act[5] abrogated state sovereign immunity.[6] In the plurality and concurring opinions in *Welch v. Texas Dept. of Highways and Public Transp.,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987), the Court held that, as to the Jones Act, a state retains sovereign immunity against suits by its own citizens in federal courts unless it has waived its immunity. The Court has

subsequently limited *Welch* to its Eleventh Amendment holding, indicating that the Jones Act still does abrogate state sovereign immunity.[7] All the preemption holdings involve intent expressed in a specific statute. There is no suggestion that the holding of *Ex parte New York, No. 1,* that general maritime law does *not* preempt, is not good law.

We conclude that maritime law does not preempt state sovereign immunity in this cause. First, this is a claim for property damage under general maritime law, *see Reliable Transfer,* 421 U.S. at 411, 95 S.Ct. at 1715, and not a statutory action for personal injury; the Dopyeras rely on no federal statute to support their claim. Since there is no statute with a clear expression of congressional intent to abrogate state sovereign immunity, we must not imply one. Second, the last Supreme Court opinion addressing the issue is *Ex parte New York, No. 1,* which held that general maritime law does not preempt state sovereign immunity.

■ The issue remains whether Texas itself waived immunity and consented to general maritime law jurisdiction in this cause. If this court concluded waiver was intended, the federal courts apparently would defer to that determination. *Welch,* 483 U.S. at 474, 107 S.Ct. at 2946 (opinion of Powell, J.). At least for purposes of Eleventh Amendment construction, the Supreme Court apparently requires the presence of an unequivocal expression before imposing a holding of waiver. *Port Authority Trans–Hudson Corp. v. Feeney,*

---

**3.** *See, e.g., Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (congressional abrogation of state immunity, pursuant to commerce clause powers); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (congressional abrogation of state immunity pursuant to enforcement power of section five of Fourteenth Amendment).

**4.** *See, e.g., Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 243, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Em-*

*ployees v. Missouri Public Health Dept.,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

**5.** 46 U.S.C. App. § 688.

**6.** In *Petty v. Tennessee–Missouri Bridge Commission,* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), the Court held that in the Jones Act language ("Any seaman who shall suffer personal injury in the course of his employment") Congress intended to abrogate state immunity as to seamen employed by or injured by a state.

**7.** *Hilton v. South Carolina Public Railways Commission,* —— U.S. ——, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991).

495 U.S. 299, 305, 110 S.Ct. 1868, 1873, 109 L.Ed.2d 264 (1990) (Waiver provisions in state act must meet same unmistakably clear standard as Congress's expression of intent to abrogate Eleventh Amendment sovereign immunity). For the reasons that follow, we conclude that under applicable federal construction rules, Texas has not waived its sovereign immunity to general maritime jurisdiction, and the State's limited waiver of sovereign immunity, under state rules of construction, insulates it from liability under the facts of this cause.

 Texas is immune from tort liability except as waived under the Texas Tort Claims Act, which provides in relevant part:

*§ 101.021* Governmental Liability—A governmental unit in the state is liable for: (1) property damage ... proximately caused by ... the negligence of an employee ... if: (A) the damage arises from the operation or use of ... motor-driven equipment; *and* (B) the employee would be personally liable ... *according to Texas law.*

*§ 101.025* Waiver of Governmental Immunity: Permission to Sue—(a) Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter. (b) A [claimant] under this chapter may sue a governmental unit *for damages allowed by this chapter.*

TEX.CIV.PRAC. & REM.CODE §§ 101.021, 101.025 (emphasis added).

This limited waiver of immunity permits suit against the sovereign only to the extent liability is imposed on an individual by Texas law. Once the plaintiff invokes the procedural devices of the Texas Tort Claims Act, to bring a cause of action against the State, then he also is bound by the limitations and remedies provided in the statute. *See Kamani v. Port of Houston,* 702 F.2d 612, 616 (5th Cir.1983); *see also Riggle v. State of California,* 577 F.2d 579, 585–86 (9th Cir.1978). The state is free to limit damages and liability to the terms of its waiver of sovereign immunity, even if general maritime law conflicts with the liability limitations of the Tort Claims Act. *Trinity River Authority v. Williams,* 689

S.W.2d 883, 886 (Tex.1985). In a cause of action against the State of Texas for property damage resulting from the operation of motor-driven equipment owned and operated by the State, the relief available is limited to that provided by Texas law, and in accordance with Texas' system for apportionment of fault. TEX.CIV.PRAC. & REM. CODE ANN. § 33.001(a) (Vernon Supp.1991).

We hold that the Dopyeras are bound by the express terms of the sovereign's limited consent to be sued. We reverse the judgment of the court of appeals and render judgment that the Dopyeras take nothing.