John O. GUILLORY, Petitioner,

v.

PORT OF HOUSTON AUTHORITY,
Respondent.

No. D–1391.

Supreme Court of Texas.

Jan. 20, 1993.

Rehearing Overruled March 3, 1993.

Robert D. Rapp, H. Victor Thomas, W. James Kronzer, Jr., Houston, for petitioner.

M. Karinne McCullough, R. Stephen Ferrell, James Patrick Cooney, Reagan M. Brown, Jennifer Bruch Hogan, Houston, for respondent.

## OPINION

HECHT, Justice.

The principal issue in this case is whether the Texas Tort Claims Act, TEX.CIV.PRAC. & REM.CODE §§ 101.001–.109, limits the liability of political subdivisions created by the Legislature under article XVI, section 59 of the Texas Constitution, for common law and federal maritime law tort claims. We hold that it does, and affirm the judgment of the court of appeals.

John O. Guillory, a longshoreman, was unloading cargo for Dixie Stevedores, Inc. when the truck he was driving flipped backwards off of a ramp and into a ship's hold. The truck was leased from the Port of Houston Authority, which owned it. The Port Authority is a navigation district created by the Legislature under article XVI, section 59 of the Texas Constitution.[1]

1. Article XVI, section 59 provides in pertinent part:

    (a) The conservation and development of all of the natural resources of this State, including ... the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

Act of June 14, 1927, 40th Leg., 1st C.S., ch. 97, 1927 Tex.Gen.Laws 256, 2257 (creation and organization of Harris County Houston Ship Channel Navigation District), *amended by* Act of April 29, 1957, 55th Leg., R.S., ch. 117, 1957 Tex.Gen.Laws 241, *amended by* Act of March 24, 1971, 62nd Leg., R.S., ch. 42, 1971 Tex.Gen.Laws 79 (name changed to Port of Houston Authority), *amended by* Act of May 25, 1987, 70th Leg., R.S., ch. 1042, 1987 Tex.Gen.Laws 3506, 3508 (organization and powers), *amended by* Act of May 28, 1989, 71st Leg., R.S., ch. 1019, 1989 Tex.Gen.Laws 4115 (organization and powers); *see* TEX.WATER CODE §§ 60.001–.414. Guillory sued both the Port Authority and Dixie Stevedores under state common law and federal maritime law, claiming damages for personal injuries caused by their negligence. A jury found that the truck was defective and attributed the negligence which caused Guillory's accident 95% to the Port Authority and 5% to Dixie. The jury awarded Guillory $284,614.04 actual damages and $500,000.00 exemplary damages. The trial court rendered judgment on the verdict that Guillory recover a total of $956,781.91 from the Port Authority, including $172,167.87 in prejudgment interest.[2]

The court of appeals reformed the judgment to limit the Port Authority's liability to $100,000. 814 S.W.2d 119. The court reasoned that because a navigation district like the Port Authority is a political subdivision of the State which can act only in a governmental capacity and not in a proprietary capacity, *Bennett v. Brown County Water Improvement Dist.*, 153 Tex. 599, 272 S.W.2d 498, 502 (1954), it is protected

by governmental immunity except to the extent immunity has been waived by the Texas Tort Claims Act, TEX.CIV.PRAC. & REM.CODE §§ 101.001(2)(B), 101.025, 101.-051. The Act limits the liability of a governmental unit like the Port Authority to $100,000 per person. TEX.CIV.PRAC. & REM. CODE § 101.023(b). The court concluded that this limitation was not precluded by federal maritime law.

■ Since the Tort Claims Act was passed in 1969, we have repeatedly held that "the waiver of governmental immunity is a matter addressed to the Legislature." *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976); *accord, State Dept. of Highways & Public Transp. v. Dopyera*, 834 S.W.2d 50, 54 (Tex.1992) ("Texas is immune from tort liability except as waived under the Tort Claims Act"); *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.1992) ("The school district, a governmental unit, is immune from liability ... unless that immunity has been waived by the Texas Tort Claims Act"); *Mount Pleasant Indep. Sch. Dist. v. Lindburg*, 766 S.W.2d 208, 211 (Tex.1989) ("Only when the legislature has clearly and explicitly waived the state's sovereign immunity may a cause of action accrue"); *Duhart v. State*, 610 S.W.2d 740, 742 (Tex. 1980). Any waiver exposes governmental units to increased liability, the burden of which must eventually be born by the general populace. In the Tort Claims Act, the Legislature has undertaken to address the difficult conflicting policies associated with a waiver of governmental immunity. We consider the Legislature better suited than this Court to try to accommodate these

(b) There may be created within the State of Texas, or the State may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law.

2. The trial court's judgment also allowed the Port Authority contribution from Dixie Steve-

dores. The court of appeals reversed this portion of the judgment, following the rule that a liable defendant has no right of contribution from a defendant against whom the injured person has no cause of action. 814 S.W.2d 119, 124. Since Guillory received compensation benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1984), he was precluded from suing Dixie Stevedores, *id.* at § 905(a). Thus, the court held that the Port Authority was not entitled to compensation from Dixie Stevedores. The Port Authority has not appealed this portion of the court of appeals' decision.

policies, and therefore we continue to refuse to disturb the balance it has struck.

Guillory does not expressly urge that governmental immunity be abrogated altogether, although he does point out that courts in other jurisdictions have done so. Rather, Guillory asks that we limit the protection of immunity to governmental activities as opposed to proprietary activities. Guillory points out that municipalities are not immune from liability for their proprietary actions, TEX.CIV.PRAC. & REM.CODE § 101.0215, and argues that other units of government should not be treated differently. To allow one governmental agency immunity for its proprietary actions and deny immunity to another agency for the same conduct, Guillory argues, is irrational and violates state and federal constitutional guarantees of equal protection to victims of the conduct. If an activity could be conducted by a private entity, Guillory contends, a governmental entity should not be immune from liability for conducting the same activity. In this case the Port Authority leased trucks for profit, an activity Guillory contends is clearly proprietary. Guillory urges that the Port Authority should be responsible for the damages caused by its negligence in failing to equip the trucks with seat belts and adequate brakes.

We reject Guillory's arguments for a number of reasons. First, the limitation on immunity which Guillory seeks has the same effect as a waiver. If we accepted Guillory's definition of proprietary activities to include anything a private entity could do, the waiver would be expansive. Private entities *can* provide police and fire protection, operate prisons, and adjudicate disputes, activities which are also governmental; there are few activities indeed which are uniquely governmental. To waive immunity for all others would virtually vitiate immunity entirely. Even if the

proposed waiver were narrower, however, it remains a matter for the Legislature, as we have consistently held.

This is especially so when the waiver for which Guillory argues is to be effected by excluding proprietary activities from the protection of immunity. The Legislature has assumed this very undertaking for municipalities, classifying proprietary and governmental activities and waiving immunity for the former. TEX.CIV.PRAC. & REM.CODE § 101.0215. In so doing, the Legislature has acted upon the authority of article XI, section 13 of the Texas Constitution, adopted in 1987.[3] This provision is a further indication of the will of the people that the waiver of immunity be left to the Legislature.

To accept Guillory's argument would require that we overrule *Bennett v. Brown,* 153 Tex. 599, 272 S.W.2d 498 (1954), and disapprove *Lynch v. Port of Houston Authority,* 671 S.W.2d 954 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), and *Smith v. Harris County Ship Channel Navig. Dist.,* 330 S.W.2d 672 (Tex.Civ. App.—Fort Worth 1959, no writ). In *Bennett* we held that governmental units created under article XVI, section 59 of the Texas Constitution are entirely governmental in function. Water improvement districts and other agencies created under this constitutional provision are different from municipalities in that the former are created by the Legislature for general public purposes, while the latter are created by consent of their inhabitants. This distinction provides a rational basis both in support of *Bennett* and in contradiction of Guillory's equal protection complaint. Inasmuch as the distinction remains valid, we decline to overrule *Bennett.*

It cannot be denied that applying immunity based upon the creation of the governmental unit instead of its function results in certain anomalies and inconsistencies.

---

**3.** "(a) Notwithstanding any other provision of this constitution, the legislature may by law define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law.

(b) This section applies to laws enacted by the 70th Legislature, Regular Session, 1987, and to all subsequent regular or special sessions of the legislature."

As Guillory points out, the Port of Galveston, owned and operated by the City of Galveston, is not as fully shielded by immunity as is the Port of Houston, a water navigation district, even though the two entities perform similar functions. However, one governmental unit cannot be denied the immunity to which it would otherwise be entitled simply because the Legislature has waived immunity for another governmental unit. One may disagree with the choices made by the Legislature, but one can hardly deny its power to choose.[4]

■ Guillory's argument that federal maritime law precludes the Port Authority's claim of immunity is answered by our recent opinion in *State Dept. of Highways & Public Transp. v. Dopyera*, 834 S.W.2d 50, 51 (Tex.1992), where we stated: "Congress did not intend for maritime law to preempt a state's sovereign immunity law in this manner." Guillory contends that *Dopyera* is wrongly decided, and further, that it should be distinguished from the present case because it involved only property damage and not personal injuries. Although the distinction between the two cases exists, it does not justify a different view of maritime law preemption in this case. We decline to overrule *Dopyera*.

■ Finally, Guillory argues that the federal courts would not hold the Port Authority immune from suit under the Eleventh Amendment to the United States Constitution, but would allow an action like Guillory's even though it would be barred by immunity in state court. Guillory places principal reliance upon *Jacintoport Corp. v. Greater Baton Rouge Port Comm.*, 762 F.2d 435 (5th Cir.), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986). However, in *McDonald v. Board of Miss. Levee Comm'rs*, 832 F.2d 901, 908 (5th Cir.1987), the Fifth

Circuit reasserted its conclusion in *Kamani v. Port of Houston Auth.*, 702 F.2d 612 (5th Cir.1983), that the Port of Houston Authority is immune from suit under the Eleventh Amendment, notwithstanding the different view taken of the Greater Baton Rouge Port Commission in *Jacintoport*.

Finding no error in the court of appeals' decision, we affirm the judgment of that court.

GAMMAGE, J., joins in the judgment only.

Dissenting opinion by DOGGETT, J., joined by SPECTOR, J.

PHILLIPS, C.J., not sitting.

DOGGETT, Justice, dissenting.

The adage "any port in a storm" did not hold true for John Guillory. Had his accident occurred at the Port of Galveston or the Port of Orange, he would be entitled to his actual damages as determined by a jury. Because, however, his employer rented a truck with defective brakes and no seatbelts from the Port of Houston, this court limits his recovery to only a fraction of what a jury determined to be reasonable. Because today's ruling denies a worker the equal protection of our laws guaranteed by the Texas Constitution, I dissent.

I.

John Guillory was unloading cargo at the Port of Houston Authority when the leased truck he was attempting to drive from the hull of a ship stalled halfway up a ramp, reared into the air, and tossed him around the inside of the cab. As a result Guillory underwent two surgeries and remains permanently disabled. At least thirty other workers also suffered severe injuries from deficiencies in trucks leased by the Authority. At times the only available means to

---

4. The cases from other jurisdictions cited by the dissent do not support its argument. In *Flax v. Kansas Turnpike Auth.*, 226 Kan. 1, 596 P.2d 446 (1979), the court struck down a statute which immunized a turnpike authority from liability for accidents on its roadway when no other governmental unit—state, counties or municipalities—enjoyed such immunity. Likewise, in *Harvey v. Clyde Park Dist.*, 32 Ill.2d 60, 203 N.E.2d 573 (1964), the court struck down a statute immunizing a park district from liability when no city had such immunity and the state and other governmental units had only limited immunity. In the present case the Port Authority's limited immunity is the same as that of the state, every county, and other arms of state government.

stop the loaded vehicles, which had no seat belts and frequently no functioning brakes, was to ram them into the sides of ships, but even this unsatisfactory option was unavailable to Guillory, going uphill without sufficient power to exit the ship's hold. Although admitting its awareness of this problem, the Port continued to lease defective trucks.

## II.

When it applies, the Texas Tort Claims Act limits the liability of local governmental units for a single occurrence of bodily injury to $100,000 per person. TEX.CIV. PRAC. & REM.CODE § 101.023(b). While the Act generally covers torts committed by local governmental units as well as the State, the Legislature did not limit the liability of a municipality arising from its "proprietary functions, which are those functions that a municipality may, in its discretion, perform in the interest of [its] inhabitants." *Id.* § 101.0215(b).[1] Since leasing motor vehicles is not required of municipalities by law, a city would be fully liable for any injuries it tortiously caused through such an operation.

Unfortunately for Guillory and others severely injured through its negligence, the Port of Houston is not a municipality. In passing the Tort Claims Act the Legislature limited the liability of other units of government, such as navigation districts, for misconduct arising from their proprietary activities. However, since port authorities that are owned and operated by municipalities are not subject to any damages limitation, anyone incurring more than $100,000 damages as a result of tortious proprietary activity by the Ports of Galveston or Orange is legally entitled to full compensation, but those suffering identical injuries under identical circumstances at the hands of a navigation district of legislative origin such as the Port of Houston are not.

Article I, Section 3 of the Texas Constitution states that "All free men ... have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges." This provision expresses the will of the people that the Legislature may not create legal categories which result in different treatment of similarly situated individuals or groups. This constitutional command for equal protection of our citizens prohibits enactments that bear "no reasonable relationship between the classes created and the purposes to be accomplished or the evils to be prevented."[2] *San Antonio Retail Grocers, Inc. v. Lafferty,* 156 Tex. 574, 297 S.W.2d 813, 816 (1957); *see also Brown v. State on Behalf of Jarvis,* 808 S.W.2d 628, 632 (Tex. App.—Austin 1991, writ denied) ("the equal protection clause ... requires that the classification be reasonable, not arbitrary, and rest on some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly situated will be treated alike"). The majority does not and cannot explain what purpose of the Tort Claims Act is potentially

---

**1.** Thus, a municipality's liability is not statutorily limited for torts arising from operation of a public utility, *id.* § 101.0215(b)(1); operation of municipally owned amusements, *id.* § 101.-0215(b)(2); administration of a federal development loan program, *Houston v. Southwest Concrete Constr., Inc.,* 835 S.W.2d 728, 732 (Tex. App.—Houston [14th Dist.] 1992, writ denied); and any other activity fitting the statutory definition that is not also listed as a governmental activity in § 101.0215(a).

At the time of Guillory's accident, the Tort Claims Act expressly excluded torts arising from the proprietary functions of municipalities but neither defined the term nor included a list of proprietary or governmental activities. *See* Acts 1969, 61st Leg., ch. 292, § 18(a), 1969 Tex.Gen. Laws 874, *amended by* Acts 1987, 70th Leg., 1st C.S., ch. 2, § 3.02, 1987 Tex.Gen.Laws 48. At

common law, Guillory's injuries would have been considered to have arisen from a "proprietary function" because they were caused by a defective motor vehicle. *See City of Houston v. Shilling,* 150 Tex. 387, 240 S.W.2d 1010, 1012 (1951). While the current version of the Tort Claims Act provides that maintenance of motor vehicles and equipment is a governmental activity, *see* TEX.CIV.PRAC. & REM.CODE § 101.-0215(a)(24), the statute does not specifically address whether leasing motor vehicles for profit should be considered a proprietary function.

**2.** While certain statutes may require more intense scrutiny and heightened justification, it is not necessary to determine the applicable standard of review here, since this legislative classification lacks even a rational basis.

served by differentiating between the proprietary functions of municipalities and those of navigation districts, or how that distinction rationally relates to this undisclosed purpose.

While admitting that its result is "anomal[ous] and inconsisten[t]," at 814, the majority nonetheless determines it is also "rational" because the Port of Houston is a direct creation of the Legislature, while the Port of Galveston, though operated by a legislatively empowered municipal corporation, is not. The difference in origin of the Port of Houston from municipal ports is entirely unrelated to the purposes of the Tort Claims Act, which was designed to lessen some of the harsh effects of absolute governmental immunity without authorizing unrestricted liability for every type of mistake. *See generally* Joe Greenhill and Thomas Murto, *Governmental Immunity*, 49 Tex.L.Rev. 463 (1971) (discussing the legislative history of the Act). Distinguishing between municipalities and other local governmental entities without regard to their functions does not advance that objective. Such a classification protects neither the coffers of the state treasury nor policymaking authority of state government. The Port of Houston is an independent body with its own tax base and receives no state funds. Its primary business is to provide cargo and docking services to shipowners for profit, and it is "almost entirely free of state administrative agency and control." G. Sidney Buchanan, *Texas Navigation Districts and Regional Planning in the Texas Gulf Coast Area*, 10 Hous.L.Rev. 533, 578 (1973).

Simply because the Legislature created the Port of Houston is no reason it should be entitled to greater immunity than municipally owned ports. As a Michigan court articulated in holding that counties should not have greater immunity than municipalities:

Rightfully, we inquire again what distinguishes a constitutional "body corporate" from a "municipal corporation." In candor, we must say the distinction, if any, is one without a difference.

*Myers v. Genesee County Auditor*, 375 Mich. 1, 133 N.W.2d 190, 193 (1965). Nor is this distinction made rational because it was part of the common law or because the Constitution declared that navigation districts are "bodies politic." TEX. CONST. art. XVI, § 59(b). "[W]hen the Constitution and the Legislature declare that a water improvement district shall be a 'body politic and corporate' it does not classify it either as more nearly like a county or city because both are bodies politic, and both are corporate." *Bennett v. Brown County Water Improvement Dist. No. 1*, 153 Tex. 599, 272 S.W.2d 498, 507 (1954) (Wilson, J., dissenting).[3] While there may be some circumstances affording a rational basis for granting greater immunity to some governmental units than others, none is present here.

Courts in our sister states have also struck down immunity classifications between functionally similar levels of government. In *Flax v. Kansas Turnpike Auth.*, 226 Kan. 1, 596 P.2d 446 (1979), the court held that a statute granting immunity to local units of government violated equal protection as applied to a legislatively created turnpike authority. The court found that there was no rational basis for treating motorists injured on one type of roadway differently from those hurt on others controlled by different governmental units. 596 P.2d at 451–52. Similarly, a statute creating a shorter limitations period for suits brought against counties was found unconstitutional as lacking any "rational permissible reason" for distinguishing between victims of misconduct on the basis of the type of governmental entity causing it. *Jenkins v. State*, 85 Wash.2d 883, 540 P.2d 1363, 1367 (1975) (en banc); *see also Har-*

---

3. Although I am inclined to agree with Guillory that *Bennett* was poorly decided, it need not be overruled. The equal protection problem at issue here is the *Legislature's* decision to treat municipalities differently from functionally similar governmental entities. Even if *Bennett* had never been issued or had held that navigation districts are not immune when exercising proprietary functions, the damages limitation in the Tort Claims Act would still be unconstitutional as applied here.

*vey v. Clyde Park Dist.*, 32 Ill.2d 60, 203 N.E.2d 573, 576 (1964) (statute granting immunity to park districts but not other governmentally operated recreational facilities violates equal protection). Statutes granting one municipality greater immunity than is available to others have also been invalidated on equal protection grounds. *See Peddycoart v. City of Birmingham*, 354 So.2d 808, 810 (Ala.1978) (statute granting immunity to state's largest city unconstitutional); *Ryszkiewicz v. City of New Britain*, 193 Conn. 589, 479 A.2d 793, 800 (1984) (no "financial, climatic, topographic, demographic, or other circumstances" justifying unique limitation on liability for one city).

Employing rhetorical misdirection to avoid explaining the inexplicable, the majority states that "one governmental unit cannot be denied the immunity to which it would otherwise be entitled simply because the Legislature has waived immunity for another governmental unit." At 815. Such analysis of legislative classifications would read the rational basis requirement entirely out of the law. The majority cannot rightfully avoid its constitutional responsibility to enforce the guarantee of equal protection by deferring to the Legislature all considerations pertaining to the scope of governmental immunity. The Legislature has made an arbitrary choice to provide the Port of Houston protection for its irresponsible activities when similarly situated ports must fully compensate the victims of their misconduct. This discriminatory classification sanctioned by the majority cannot withstand scrutiny under the equal protection provisions of the Texas Constitution, and it is the duty of this court to police the mandate of the people there embodied.

SPECTOR, J., joins in this dissenting opinion.