The UNIVERSITY OF TEXAS
MEDICAL BRANCH AT
GALVESTON, Appellant,

v.

Audrey GREENHOUSE, Appellee.

No. 01–93–00371–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 15, 1994.

Opinion Overruling Rehearing
Dec. 22, 1994.

Dan Morales, Will Pryor, Delmar L. Cain, Barbara L. Stroud, Mary F. Keller, Austin, for appellant.

Russell G. Burwell, III, Gregory B. Enos, Texas City, for appellee.

Before OLIVER–PARROTT, C.J., and WILSON and O'CONNOR, JJ.

## OPINION ON MOTION
## FOR REHEARING

O'CONNOR, Justice.

We withdraw our opinion of March 10, 1994, and substitute this opinion in its stead. The principal issue in this case is whether the discovery rule applies to the notice provisions of the Texas Tort Claims Act. We hold it does not and reverse.

The plaintiff, Audrey Greenhouse, brought a medical malpractice claim against the University of Texas Medical Branch at Galveston (UTMB). She alleged that UTMB's surgical staff negligently left a portion of a surgical needle in her body during a mastectomy. UTMB does not dispute there is a small, curved "metallic artifact" in the subcutaneous tissue of Greenhouse's right front chest wall, near her lower ribs. A jury found UTMB negligent and awarded Greenhouse $100,000. UTMB appeals the jury's findings.

### Factual background

On June 17, 1987, UTMB faculty surgeon Dr. Sally Abston performed a modified radical mastectomy on Greenhouse's right breast. The doctor intentionally left about 38 metal clips in Greenhouse's chest.[1]

In 1988, Greenhouse complained to her oncologist, Dr. Susan McClure, about pain in her chest. Dr. McClure ordered an MRI, which was performed on May 13, 1988. The radiologist's report stated in part:

> The right breast is absent, consistent with the history of a right mastectomy. The pectoralis major and minor muscles are present. Incidentally noted is the fact that the right pectoralis minor is much smaller than the left. *A metallic artifact, located within the subcutaneous tissue of the right lower anterior chest wall could be related to the patient's surgery.*[2]

(Emphasis added.) Dr. McClure did not see the MRI films, but received the radiologist's report. Her patient notes indicate the MRI showed, among other things, a "metallic artifact, possibly related to prev. surgery, in *R. ant. chest.*" (Emphasis added.) Her notes omit reference to the *lower* anterior chest wall.

Dr. McClure referred Greenhouse back to the surgical tumor clinic for evaluation. In her referral, she stated, "Today I feel a small subcut. nodule, tender." She indicated that she marked the area with an "X" and stated the nodule "may be metallic artifact seen on

---

1. Dr. Abston testified the clips were used "to keep lymph from leaking."

2. Dr. McClure testified the anterior, or front, chest wall runs from the collarbone to the lower hip.

recent MRI." Dr. McClure testified she feared the nodule signaled a recurrence of Greenhouse's breast cancer.

The nodule to which Dr. McClure referred was not, in fact, the metallic artifact mentioned in the MRI report. She testified:

> [W]hen I wrote my little summary of the M–R–I report, instead of copying all the words on there, writing lower anterior chest, I wrote anterior chest, so when I went back to write my consult, and thumb through, see my own note, I didn't write on my note "lower," in which case I never would have mentioned that at all.

The nodule she felt was higher up in the chest wall than the metallic artifact.

Dr. Abston testified she examined Greenhouse the same day Dr. McClure wrote the referral.[3] She testified the nodule and the tenderness about which Greenhouse complained were in the upper chest. Dr. Abston remembered seeing the "X" drawn by Dr. McClure on Greenhouse's chest, and that the "X" marked the nodule. Medical notes written by Dr. Robert Alexander of the surgical department on May 31, 1988, indicate Greenhouse complained of pain in the right anterior chest. His notes further state:

> At this point a nodule is felt. Chest x-ray reveals surgical clips in this area. Last week the area was injected on 3 sequential days with Marcaine without relief. The patient will now be brought back into the Minor OR on 5/7/88 [sic] for incision and exploration of *the right anterior chest with exploration for retained surgical clip or other foreign body.*

(Emphasis added.)

On May 31, 1988, Greenhouse signed a disclosure and consent form, in which she consented to "right anterior chest incision with exploration for surgical clip or foreign" [sic]. The form indicated that a possible hazard of the procedure was "failure to remove clip." The surgery was performed on June 7, 1988, and the doctor removed a mass of dead fatty tissue from Greenhouse's upper chest. The mass was located near the area containing the surgical clips, and was not located near the metallic artifact in the lower chest wall.

In September 1988, Greenhouse had another MRI. The radiologist's report for this test states in part:

> Comparison is made with the previous exam less than six months ago. . . . Again seen are the surgical clips on the right from an axillary node dissection as well as right mastectomy change. *A small metallic fragment likely representing a broken needle is seen in the soft tissues of the right anterior chest wall.*

UTMB brings six point of error. The first three points deal with the notice provisions of the Texas Tort Claims Act.[4] In its last three points, UTMB complains of the sufficiency of the evidence to support the jury's findings.

## The Tort Claims Act

■ The Texas Tort Claims Act (the Act) was enacted to abolish some of the government's immunity from suit. Tex.Civ.Prac. & Rem.Code Ann. § 101.025 (Vernon 1986); *Brown v. Owens,* 674 S.W.2d 748, 750 (Tex. 1984). The Act states that a governmental unit is entitled to receive notice of a claim not later than six months after the day that the incident giving rise to the claim occurred. Tex.Civ.Prac. & Rem.Code Ann. § 101.101(a) (Vernon 1986). The notice of claim requirement in subpart (a) does not apply if the governmental unit has actual notice that the claimant has received some injury. Tex.Civ. Prac. & Rem.Code Ann. § 101.101(c) (Vernon 1986). The purpose of the notice of claim requirement is to ensure a prompt reporting of claims to enable the governmental unit to investigate the merits of a claim while the facts are fresh and conditions remain substantially the same. *City of Houston v. Torres,* 621 S.W.2d 588, 591 (Tex.1981); *Parrish v. Brooks,* 856 S.W.2d 522, 525 (Tex.App.— Texarkana 1993, writ denied); *Cavazos v. City of Mission,* 797 S.W.2d 268, 271 (Tex. App.—Corpus Christi 1990, no writ); *Rosales*

---

3. Although Dr. Abston testified she examined Greenhouse and operated on her a second time, Greenhouse testified Dr. Robert Alexander examined her and performed the second surgery.

4. Tex.Civ.Prac. & Rem.Code Ann. § 101.002 (Vernon 1986).

*v. Brazoria County,* 764 S.W.2d 342, 344 (Tex.App.—Texarkana 1989, no writ).

■ In three points of error, UTMB asserts: the trial court erred in denying its motions for directed verdict and judgment non obstante veredicto because there was no evidence UTMB received notice as required by the Act; the trial court erred in applying the discovery rule to the notice provision of the Act; and there was no evidence or insufficient evidence to support the jury's finding that UTMB had notice within six months of when Greenhouse knew or should have known of her injury.

It is undisputed that Greenhouse did not give UTMB written notice of her injury within six months after the day the incident giving rise to the claim occurred. The injury of which she complains—a surgical needle left in her chest during her mastectomy—occurred on June 17, 1987. Greenhouse gave UTMB written notice on May 25, 1989. The only evidence of actual notice is UTMB's medical records. The first indication that a needle was left in Greenhouse's chest appears in the May 13, 1988, MRI report, which refers to a metal artifact in the subcutaneous tissue of the right lower anterior chest wall. UTMB clearly did not have either written or actual notice within six months of the date the injury occurred.

The trial court applied the discovery rule. Jury question number three asked:

> Did the University of Texas Medical Branch receive notice of Audrey Greenhouse's claim within six months after the day that she knew or should have known of the incident giving rise to her claim? The University of Texas Medical Branch may receive notice of a claim by formal written notice or actual notice. The notice must reasonably describe the damage or injury claimed, the time and place of the incident and the incident.

UTMB asserts the discovery rule does not apply to the Act, and relies upon *Sanford v. Texas A & M University,* 680 S.W.2d 650 (Tex.App.—Beaumont 1984, writ ref'd n.r.e.). In *Sanford,* the court of appeals held "the

discovery rule [is] not applicable to the instant cause of action brought pursuant to the Texas Tort Claims Act because of its plain, mandatory and compelling wording." *Id.* at 652. *Sanford* is the only Texas case to confront this issue directly.

■ Greenhouse responds that the trial court properly applied the discovery rule because "Texas courts have held that a person who is incapable of giving notice is excused from the strict notice requirements of the Tort Claims Act"; she further asserts that if the discovery rule does not apply to the notice provision of the Act, the Act is unconstitutional and violates her rights to due process, equal protection,[5] and open courts. We find the due process guarantee set forth in the open courts provision of the Texas Constitution does not apply in this case; we further find the cases upon which Greenhouse relies for the proposition that she is excused from giving notice are distinguishable.

■ The Texas Constitution provides, "All courts shall be open, and every person for an injury done him, and his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. This "open courts" provision is premised upon the rationale that the legislature has no power to make a remedy by due course of law contingent upon an impossible condition. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 355 (Tex.1990). To establish an open courts violation, a litigant must satisfy a two-part test: first, she must show she has a well-recognized common-law cause of action that is being restricted; second, she must show the restriction is unreasonable or arbitrary when balanced against the purpose of the statute. *Id.* The Supreme Court has stated:

> A common law cause of action exists without a legislative enactment. As such, article I, section 13 of the Texas Constitution mandates that the courts be open to pursuing such claims. The legislature is not entitled to restrict or abrogate a common-law cause of action without a reasonable

---

**5.** Although Greenhouse raises an equal protection claim, she has not supported it with argument or authority. She therefore waived review of this issue. Tex.R.App.P. 74(f).

basis and without providing an adequate substitute. *If, however, a cause of action was not recognized at common law, but was itself created by the legislature, any legislative abrogation of the cause of action would not be a true abrogation of a constitutional right. Rather, the legislature would simply not have granted as extensive a right as it might have.*

*Moreno,* 787 S.W.2d at 355 (emphasis added).

The common-law doctrine of sovereign immunity provides the State is not liable for the negligence of its employees absent a constitutional or statutory provision for liability. *University of Texas Medical Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex. 1994). A state agency, such as a branch of the University of Texas system, is an arm of the State, and is shielded by sovereign immunity. *Whitehead v. University of Texas Health Science Ctr. at San Antonio,* 854 S.W.2d 175, 181 (Tex.App.—San Antonio 1993, no writ).

The legislature enacted the Act to waive governmental immunity in certain circumstances. *York,* 871 S.W.2d at 177. But for the Act, the doctrine of sovereign immunity would have precluded Greenhouse's lawsuit against UTMB, an arm of the State. Her suit is a statutory cause of action that exists solely by virtue of the Act.[6] *Texas Dep't of Mental Health and Mental Retardation v. Petty,* 817 S.W.2d 707, 721 (Tex.App.—Austin 1991), *aff'd,* 848 S.W.2d 680 (Tex.1992); *cf. White v. Annis,* 864 S.W.2d 127, 131 (Tex. App.—Dallas 1993, no writ) (exploding tire of city-owned truck, which broke plaintiff's leg,

gave rise to both a statutory cause of action against the city and common law negligence cause of action against garage superintendent). Thus, Greenhouse cannot meet the first prong of the open courts test because she does not have a "well-recognized common law cause of action." We therefore find that appellant's rights under the open courts provision of the Texas Constitution have not been violated.

We agree with Greenhouse that a party laboring under a physical, mental, or legal incapacity (such as minority) may be excused from strict compliance with the notice requirements in city charters. *See Torres,* 621 S.W.2d at 591; *McCrary v. City of Odessa,* 482 S.W.2d 151, 154 (Tex.1972); *Hatcher v. City of Galveston,* 775 S.W.2d 37, 39 (Tex. App.—Houston [1st Dist.] 1989, no writ). These exceptions are not applicable to Greenhouse's case. The right to recover from a municipality is a common-law cause of action to which the open courts provision would apply. *Moreno,* 787 S.W.2d at 355; *Hanks v. City of Port Arthur,* 48 S.W.2d 944, 948 (Tex.1932).[7]

The Texas Supreme Court has said of the Act, "Once a plaintiff invokes the procedural devices of the Texas Tort Claims Act, to bring a cause of action against the State, then he is also bound by the limitations and remedies provided in the statute." *State Dep't of Highways v. Dopyera,* 834 S.W.2d 50, 54 (Tex.1992). Greenhouse, by bringing a claim against UTMB under the Act, is bound

---

**6.** Had the legislature intended the discovery rule to apply to the notice provisions of the Act, it could have written the discovery rule into the Act, as it did with the DTPA. See Tex.Bus & Com Code Ann. § 17.565 (Vernon 1987).

**7.** We are aware that in *Torres,* which involved a suit against a municipality, certain language in the opinion implies the discovery rule would apply to lawsuits brought under the Act. In *Torres,* the only question before the Supreme Court was whether the plaintiff's belief that his injuries were trivial excused him from giving timely notice to the city of Houston as required by its charter. In finding that Torres was not excused from complying with the notice requirements, the court noted that in personal injury actions, a cause of action accrues when the wrongful act effects an injury, regardless of when

the claimant learned of the injury, unless the discovery rule applies. The court stated,

> The "discovery rule" exception would not be applicable where the undisputed evidence establishes that the claimant knew at the time of the occurrence that he had been injured. Here Torres obviously knew of the injury in that he promptly filed a notice of injury form with his employer and saw his family doctor.

*Id.* at 592. This language implies the discovery rule *would have applied* had Torres not known at the time of the incident that he had been injured. We are guided, however, by *Moreno,* and believe that the inapplicability of the discovery rule to the Act is not an abrogation of a right; rather, the legislature has not granted as extensive a right as it might have. *See Moreno,* 787 S.W.2d at 355.

by the limitations of the Act, including the notice provision.

It is clear from the facts of this case that Greenhouse was incapable of complying with the notice requirements because neither she nor UTMB learned of her injury within the six-month time frame. While we believe it is remarkably unfair to deprive Greenhouse of her right of recourse against UTMB because she was unable, through no fault of her own, to comply with the notice requirements, we must agree with UTMB that the trial court erred in applying the discovery rule. We reluctantly sustain point of error two. Because of our disposition of this point of error, we need not address UTMB's remaining points. We reverse and render judgment that Greenhouse take nothing by her suit against UTMB.

### OPINION ON APPELLEE'S MOTION FOR REHEARING

We overrule Greenhouse's motion for rehearing.

■ In our opinion on UTMB's motion for rehearing, we stated that Greenhouse waived her equal protection claim because she did not support it with argument or authority in her original brief. However, as Greenhouse points out in her motion for rehearing, she did file a postsubmission brief that addressed this issue. We therefore address the merits of her equal protection claim.

Greenhouse's equal protection claim is without merit. Texas cases echo federal standards when determining whether a statute violates equal protection under either the federal or state constitution. *Rose v. Doctor's Hosp.*, 801 S.W.2d 841, 846 (Tex.1990). Those standards dictate that when the classification created by a state statute does not infringe upon fundamental rights or does not burden an inherently suspect class, equal protection requires only that the statutory classification be rationally related to a legitimate state interest. *Id.* State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts may be conceived to justify it. *Tarrant County Hosp. Dist. v. Ray*, 712 S.W.2d 271, 273 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.).

The purpose of the notice provision of the Tort Claims Act is to enable a governmental unit to investigate allegations against it while facts are fresh and conditions are substantially similar so it may guard against unfounded claims, settle claims, and prepare for trial. *City of Houston v. Torres*, 621 S.W.2d 588, 591 (Tex.1981). The notice provision is rationally related to a legitimate state interest.