

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

June 3, 2004

The Honorable Mike Krusee
Chairman, Committee on Transportation
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0196

Re: Whether Transportation Code section 521.126 prohibits a private security guard from running a driver's license through a device that electronically reads driver's license information to enable the Port of Houston Authority police officers to access and use the information (RQ-0143-GA)

Dear Representative Krusee:

You ask whether Transportation Code section 521.126, as recently amended, prohibits a private security guard from running the holder's license through a device that reads electronic license information to enable the Port of Houston Authority police officers to access and use the information "as part of its security procedures to control access to its terminals."[1] Section 521.126(b) provides that a person commits an offense if the person:

> (1) accesses or uses electronically readable information derived from a driver's license, commercial driver's license, or personal identification certificate; or

> (2) compiles or maintains a database of electronically readable information derived from driver's licenses, commercial driver's licenses, or personal identification certificates.

TEX. TRANSP. CODE ANN. § 521.126(b)(1)-(2) (Vernon Supp. 2004). As pertinent here, subsection (d) makes an exception for "a peace officer, as defined by Article 2.12, Code of Criminal Procedure, acting in the officer's capacity." Id. § 521.126(d)(2).

You state that the Port Authority has proposed, as part of a federally-mandated security plan, for visitors to its facilities who do not possess a Port Authority-issued identification badge to present their state driver's license to gain entry. See Request Letter, supra note 1, at 1. According to the

---

[1]See Letter from Honorable Mike Krusee, Chairman, Committee on Transportation, Texas House of Representatives, to Honorable Greg Abbott, Texas Attorney General at 1 (Dec. 9, 2003) (on file with Opinion Committee, also available at http://www.oag.state.tx.us) [hereinafter Request Letter].

plan, a security guard, or perhaps the license holder, would run the license through a device that electronically reads the digital information on the license's magnetic stripe.[2] The device will be connected to a computer maintained by the Port Authority's Port Police Department (the "Police Department"). *See* Port Authority Brief, *supra* note 2, at 4. The Police Department computer will store in a database the driver's license information as well as the time, date, and gate of entry. *Id.* As explained:

> The Port Authority's proposal does not intend to give Security Guards or visitors the ability to retrieve, access or use the database created from the electronic reading of the driver's licenses. The ability to access the database is intended to be solely available to the Port Authority's Police Officers in the Police Department.

*Id.* From information in the database the Police Department may determine that an individual is a frequent visitor and may require the individual to obtain a Port Authority identification badge. *Id.* Also, the Police Department's access to other law enforcement information sources will enable the Police Department to determine if a presented driver's license is valid. *Id.* If not, a Police Department officer will be dispatched to the gate to investigate. *Id.*

The Port Authority is an independent political subdivision of the State of Texas originally created under article III, section 52 of the Texas Constitution and currently operated under that section and article XVI, section 59 of the Texas Constitution.[3] The Port Authority has general rulemaking power to "protect [terminals and other] property and to promote the health, safety, and general welfare of persons using the property." TEX. WATER CODE ANN. § 60.071 (Vernon 2004); *see also id.* § 60.072 (granting specific enforcement powers relating to trespass, loitering, and other matters). The Port Authority is authorized to employ peace officers, who may enforce Port Authority ordinances, rules, or regulations, and "make arrests, serve criminal warrants, subpoenas, or writs, and perform any other service or duty which may be performed by any sheriff, constable, or other duly constituted peace officer of the State of Texas in enforcing other laws of this state." *Id.* § 60.077; *see also* Tex. Att'y Gen. Op. Nos. JM-742 (1987) at 4, JM-878 (1988) at 3-4.

The security guards at the Port Authority's gates, however, are not peace officers under the Code of Criminal Procedure. *See* Port Authority Brief, *supra* note 2, at 4; TEX. CODE CRIM. PROC.

---

[2]*See* Brief from Wade Battles, Managing Director, Port of Houston Authority, to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General at 2 (Jan. 21, 2004) (on file with Opinion Committee) [hereinafter Port Authority Brief].

[3]Act approved June 6, 1927, 40th Leg., 1st C.S., ch. 97, 1927 Tex. Gen. Laws 256, 256-259 (creating Harris County Houston Ship Channel Navigation District), *amended by* Act of Apr. 11, 1957, 55th Leg., R.S., ch. 117, 1957 Tex. Gen. Laws 241, 241-253, *amended by* Act of Mar. 24, 1971, 62d Leg., R.S., ch. 42, 1971 Tex. Gen. Laws 79 (changing name to Port of Houston Authority), *amended by* Act of May 25, 1987, 70th Leg., R.S., ch. 1042, 1987 Tex. Gen. Laws 3506, 3506-08 (organization and powers), *amended by* Act of May 29, 1989, 71st Leg., R.S., ch. 1019, 1989 Tex. Gen. Laws 4115, 4116-17 (organization and powers); *see* TEX. WATER CODE ANN. §§ 60.001-.414 (Vernon 2004). *See also Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 813 (Tex. 1993); Tex. Att'y Gen. Op. No. H-137 (1973).

ANN. art. 2.12 (Vernon Supp. 2004). A private security company provides those security guards under contract with the Port Authority, and they act at the direction of the Police Department.[4] *See* Port Authority Brief, *supra* note 2, at 4.

Section 521.126 of the Transportation Code, as amended in 2003, provides:

(a) The [Department of Public Safety] may not include any information on a driver's license, commercial driver's license, or personal identification certificate in an electronically readable form other than the information printed on the license and a physical description of the licensee.

(b) Except as provided by Subsection (d), a person commits an offense if the person:

(1) accesses or uses electronically readable information derived from a driver's license, commercial driver's license, or personal identification certificate; or

(2) compiles or maintains a database of electronically readable information derived from driver's licenses, commercial driver's licenses, or personal identification certificates.

(c) An offense under Subsection (b) is a Class A misdemeanor.

(d) The prohibition provided by Subsection (b) does not apply to:

(1) an officer or employee of [DPS] who accesses or uses the information for law enforcement or government purposes;

(2) a peace officer, as defined by Article 2.12, Code of Criminal Procedure, acting in the officer's official capacity;

---

[4]We assume that the Port Authority is authorized to use contract security guards who are not peace officers for the duties assigned to them. *See* Tex. Att'y Gen. Op. Nos. JM-742 (1987), JM-878 (1988) (determining that Port Authority is not authorized to employ security guards who are not commissioned peace officers to perform law enforcement duties).

> > (3) a license deputy, as defined by Section 12.702, Parks and Wildlife Code, issuing a license, stamp, tag, permit, or other similar item through use of a point-of-sale system under Section 12.703, Parks and Wildlife Code; or
>
> > (4) a person acting as authorized by Section 109.61, Alcoholic Beverage Code.
>
> > (e) The prohibition provided by Subsection (b)(1) does not apply to a financial institution if the information is assessed and used only for purposes of identification of an individual [and for certain other uses with consent].
>
> > (f) [generally prohibiting the use of electronically readable driver's license information for telephone solicitation].

TEX. TRANSP. CODE ANN. § 521.126(a)-(f) (Vernon Supp. 2004). Under subsection (d)(2), Port Authority peace officers acting in that capacity may use electronically readable driver's license information without violating section 521.126. Your question, however, is whether a security guard may facilitate a Port Authority peace officer's access or use of the information by running the license through an electronic reader.

Courts construing a criminal statute seek to effectuate the intent of the Legislature, focusing on the statute's literal text, and attempt to discern the fair, objective meaning of that text. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). When application of a statute's plain language is ambiguous or would lead to absurd consequences, courts consider, among other things, the object of the legislation, the consequences of a particular construction, the circumstances of the statute's enactment, prior statutory provisions, and legislative history. *State v. Mancuso*, 919 S.W.2d 86, 88 (Tex. Crim. App. 1996) (citing TEX. GOV'T CODE ANN. § 311.023).

Section 521.126(b)(1) and (2) prohibits accessing or using electronically readable information derived from a driver's license, or compiling or maintaining a database of such information. When read in isolation, subsection (b) is somewhat ambiguous because "access" and "use" are not precise terms. However, they must be read in the statute's context. *Patterson v. State*, 769 S.W.2d 938, 940-41 (Tex. Crim. App. 1989) (stating that, while the verb "use" can mean many things, as used in a statute denying the possibility of probation to one who "used" a deadly weapon during the commission of a felony, "used" means that the deadly weapon was employed or utilized in order to facilitate the felony). In subsection (b)(1) and (2), the object of the verbs "access" and "use" is "information." In subsection (a), "information" which may be in electronically readable form is substantive information such as the information that is printed on the license and a physical description of the license holder. *See* TEX. TRANSP. CODE ANN. § 521.126(a) (Vernon Supp. 2004). Consequently, in context, when section 521.126(b)(1) prohibits access or use of "information derived from a driver's license," it denotes something more than physically running a license through the

Police Department's electronic reader. *Id.* § 521.126(b)(1). The reader captures digital data and transmits it to the Police Department computer, where peace officers access and otherwise use the information. By running a license through an electronic reader, a license holder or security guard has not accessed or used the electronically readable information.

Subsection (d)(2) expressly exempts peace officers acting in their official capacity from the prohibitions in subsection (b)(1) and (2). *See id.* § 521.126(d)(2). Subsection (d)(2) would not permit peace officers to simply delegate their authority to access or otherwise use electronically readable information to a security guard or other person who is not a peace officer. *See id.*; Tex. Att'y Gen. Op. No. JM-742 (1987) (determining that Port of Houston Authority is not authorized to employ private security personnel to perform peace officer functions). But nothing in section 521.126 precludes non-peace officers, who do not themselves access or use information, from mechanically assisting peace officers acting in that capacity to do so.

Such a construction is consistent with the statute's apparent purpose. The statute as a whole reveals an intent to protect the license holder by limiting the permissible uses of electronically readable driver's license information. It is difficult to discern what legislative purpose would be served by criminalizing conduct by a license holder or other individual who does no more than enable a peace officer to use the information as permitted under subsection (d)(2).

Further, the history of section 521.126 prior to the 2003 amendment does not lead to a contrary conclusion. As originally enacted, section 521.126 provided:

> ELECTRONICALLY READABLE INFORMATION. (a) [DPS] may not include any information on a driver's license, commercial driver's license, or identification certificate in an electronically readable form other than the information printed on the license and a physical description of the licensee.
>
> (b) [DPS] shall take necessary steps to ensure that the information is used only for law enforcement or governmental purposes.
>
> (c) Unauthorized use of the information is a Class A misdemeanor.

Act of May 30, 1999, 76th Leg., R.S., ch. 1340, § 1, 1999 Tex. Gen. Laws 4554, 4554 (amended 2003). The courts have not interpreted the statute. Opinions from this office have focused on the statute's pre-2003 limitation to law enforcement and governmental use that was eliminated in the 2003 amendment. *See* Tex. Att'y Gen. Op. Nos. JC-0337 (2001) (concluding that magnetic stripe information could "be utilized only by law enforcement and other governmental agency personnel acting in their official capacities"); JC-0423 (2001) (recognizing exception to prevent violations of the Alcoholic Beverage Code, such as underage drinking, and citing section 109.61 of the Alcoholic Beverage Code); JC-0499 (2002) (same). Most recently, in Attorney General Opinion JC-0540, this office determined that Texas Transportation Code section 521.126's allowance for law enforcement and governmental uses did not authorize financial institutions to access magnetic stripe information

on Texas driver's licenses, and that the state statute was not preempted by the USA PATRIOT Act's requirements that a financial institution verify the identity of certain customers engaging in certain transactions. *See* Tex. Att'y Gen. Op. No. JC-0540 (2002); USA PATRIOT Act of 2001, Pub. L. No. 107-56.

From the scant legislative history available, it appears that the principal purpose of the 2003 amendment was to provide financial institutions limited authority to use electronically readable driver's license information as a means of fulfilling USA PATRIOT Act requirements, effectively superseding Attorney General Opinion JC-0540 (2002). *See* SENATE COMM. ON INFRASTRUCTURE DEVELOPMENT & SECURITY, BILL ANALYSIS, Tex. S.B. 1445, 78th Leg., R.S. (2003) (enrolled version). Nothing in the amendment's history suggests an intent to criminalize conduct that does nothing more than enable a peace officer to utilize electronically readable information for the purposes allowed under section 521.126(d)(2). Consequently, we conclude that section 521.126 of the Transportation Code does not prohibit a private security guard from running a driver's license through an electronic reader, merely to enable Port Authority peace officers acting in that capacity to access and use the information.[5]

---

[5]We confine our opinion to the facts presented, and do not address situations in which the information may be accessed or used by a person or entity not excepted from section 521.126's prohibition.

## S U M M A R Y

Section 521.126 of the Transportation Code does not prohibit a private security guard from running a driver's license through a device that electronically reads driver's license information to enable the Port Authority peace officers acting in that capacity to access and use the information.

Attorney General Opinion JC-0540 (2002) is superseded in part by statute.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee